## S98G0610. BAHADORI v. NATIONAL UNION FIRE INSURANCE COMPANY et al.

(507 SE2d 467)

THOMPSON, Justice.

We granted certiorari to the Court of Appeals in this workers' compensation case[1] and posed this question: What limitation period applies to an action for the recovery of overpaid benefits under OCGA § 34-9-104 (d) (2)? We hold that the limitation period in such an administrative action is two years.

In 1989, Bahadori was injured in an accident arising out of and in the course of his employment with Sizzler # 1543 and he was paid income benefits under the Workers' Compensation Act. After he recovered, Bahadori took a job with S & S Cafeterias in South Carolina and his benefits stopped.

Thereafter, Bahadori sought additional income benefits from Sizzler, asserting that, due to his injury, he was unable to work for S & S from September 8 through December 12, 1992. This claim was not controverted and it was paid in early 1993. Later that year, Bahadori sought income benefits and medical expenses, this time claiming he was unable to work from September 1 through December 12, 1993. During the course of investigating the 1993 claim, Sizzler concluded that Bahadori was actually working and receiving a salary during the time he claimed to be unable to work in both 1992 and 1993. Accordingly, in February 1995, Sizzler requested a hearing to controvert Bahadori's 1993 claim and to seek reimbursement of the income benefits paid for Bahadori's 1992 claim. Bahadori withdrew his 1993 claim for income benefits and contested Sizzler's administrative action to recover the overpayment of 1992 income benefits. The ALJ determined that Sizzler was entitled to be reimbursed for the 1992 income benefits because Bahadori worked and received a salary from S & S during the relevant time period. That ruling was upheld by the appellate division and affirmed by the superior court. The Court of Appeals granted Bahadori's application for discretionary appeal and a majority of that court affirmed, holding, inter alia, that a four-year limitation period applies to an administrative claim to recover the overpayment of income benefits.

1. In 1978, the legislature empowered the Workers' Compensation Board to order an employee to repay income benefits to an employer. OCGA § 34-9-104 (d) (2); Ga. L. 1978, p. 2220. Until that time, the board had no such power and an employer's claim for repayment of income benefits had to be brought in civil court. *Georgia Cas. &c. Co. v. Randall*, 162 Ga. App. 532, 533 (292 SE2d 118) (1982).

In its entirety, OCGA § 34-9-104 (d) reads:

---

[1] *Bahadori v. Sizzler No. 1543*, 230 Ga. App. 52 (505 SE2d 23) (1997).

(1) Subject to the limitation in subsection (a) of this Code section that a change of condition was a change which occurred after the date on which the wage-earning capacity, physical condition, or status of the employee was last established by award or otherwise, the award or order contained in the final decision entered by the administrative law judge or the board shall be effective as of the time of change in condition as found by the administrative law judge or board, notwithstanding the retroactive effect of the award or order, provided that no execution following a judgment entered under Code Section 34-9-106 shall be affected.

(2) If *the decision* determines that an overpayment of income benefits has been made and no future income benefits are due, the administrative law judge or the board, in its discretion, may order the employee or beneficiary to repay to the employer or the insurer, the sum of the overpayments. Where there has been determined an overpayment of income benefits and future income benefits were due, the decision shall order the overpayment to be recovered by shortening the period of future weekly income benefits or by reducing the weekly benefit, or both.

(Emphasis supplied.) Viewed in context, the italicized words obviously refer to the decision of the board stemming from a change of condition claim. *Thompson v. Eastern Air Lines*, 200 Ga. 216, 221 (36 SE2d 675) (1946) (words of a statute are to be taken in their natural and ordinary signification). Thus, although the 1978 statute provides that an employer's claim for repayment of income benefits can be brought before the board, it is not so broad as to allow an employer to seek repayment of any overpayment under any circumstance. On the contrary, OCGA § 34-9-104 (d) (2) is narrowly tailored so as to permit the board to adjudicate an overpayment claim only when it arises in the context of a change of condition hearing. This is manifest from the placement of the repayment statute, OCGA § 34-9-104 (d) (2), within the general change of condition statute, i.e., OCGA § 34-9-104, and from the language of the repayment statute itself.

To the extent that *Georgia Cas. &c. Co. v. Randall*, supra, and *Spiva v. Union County*, 172 Ga. App. 151 (322 SE2d 351) (1984) authorize the board to adjudicate overpayment claims generally, i.e., in the absence of a change in condition claim, they are overruled.

2. Because OCGA § 34-9-104 (d) (2) provides that a claim for overpayment of benefits can only be brought within the context of a change of condition case, and because the statute of limitation in a

change of condition case is two years,[2] we hold that the two-year statute of limitation which is applicable generally to change of condition cases is applicable to a claim for the overpayment of income benefits. It follows that the Court of Appeals erred in holding that the statute of limitation in this case was four years.

The mere fact that our ruling can be said to yield two statutes of limitation (a two-year statute for an overpayment claim in an administrative action and a four-year statute for a reimbursement claim in civil court) is of no import. As Judge Blackburn pointed out in his dissent:

> It is not inconsistent to allow some claims to go before the Board and some claims to continue to be filed in civil courts. Where there is no claim pending before the Board, a claim for recoupment of sums paid but not due is not different from any other claim seeking monetary recovery and should be handled by the civil courts of general jurisdiction until the legislature determines otherwise.

*Bahadori v. Sizzler No. 1543*, 230 Ga. App. 52, 60 (505 SE2d 23) (1997).

3. Sizzler asserts that, even if the statute of limitation in this case is two years, the statute should have been tolled as a matter of law on account of Bahadori's fraud. We cannot accept this assertion.

"The general rule supported by the decisions in most jurisdictions is that the fraudulent concealment of a cause of action [or other legal or quasi-legal claim] from the one to whom it belongs, by the one against whom it lies, constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action [or other legal or quasi-legal claim]." 51 AmJur2d 717, Limitation of Actions, § 147. This is the rule in Georgia. The fraud which tolls a statute of limitation must be such actual fraud as could not have been discovered by the exercise of ordinary diligence. *Webb v. Lewis*, 133 Ga. App. 18, 21 (209 SE2d 712) (1974); OCGA § 9-3-96 ("fraud by which the plaintiff has been debarred or deterred from bringing an action [tolls the statute of limitation]").

This rule is applied even where actual fraud is the gravamen of the action. The statute of limitation is only tolled until the fraud is discovered or by reasonable diligence should have been discovered. *Shipman v. Horizon Corp.*, 245 Ga. 808 (267 SE2d 244) (1980). And the rule in workers' compensation cases is the same. *Perkins v. Aetna*

---

[2] See OCGA § 34-9-104 (b).

*Cas. &c. Co.*, 147 Ga. App. 662 (249 SE2d 661) (1978). Thus, where the fraud of an employee and his employer thwarts an insurer's reasonably diligent investigation, the time within which the insurer could controvert the claim is tolled. *Spiva v. Union County*, 172 Ga. App. 151, supra.

Did Bahadori's fraud thwart Sizzler's original investigation? Because no findings of fact were made in this regard, we cannot say that it did, or that it did not. Accordingly, we reverse and remand for further findings. We reach this determination after examining three cases, *Spiva*, supra; *Anderson v. Araguel, Sanders, Carter & Swain*, 163 Ga. App. 610 (295 SE2d 750) (1982); and *Carpet Transport v. Pittman*, 187 Ga. App. 463 (370 SE2d 651) (1988); and concluding that *Carpet Transport* should be our guide.

In *Spiva*, supra, the claimant was injured at home and he was not performing a service for his employer. Nevertheless, the employer submitted a report to the insurer which falsely represented that the injury arose out of and in the course of employment. The insurer contacted the claimant by telephone on two occasions. The claimant answered the insurer's questions truthfully, but he did not disclose the truth about his employment status. The claim was not controverted until 23 months after the accident. The board found that the employee and employer "misled" the insurer and that the time within which the claim could be controverted was tolled. The Court of Appeals affirmed, holding that, under the facts, the fraud was sufficient to toll the 21-day notice to controvert requirement. Id. at 152 (citing *Shipman*, supra, for the principle that fraud tolls a statute of limitation until such time as the fraud would have been discovered). Going further, the *Spiva* court also ruled that the insurer could controvert the claim after 60 days of the due date of the first payment because of the newly discovered evidence exception. OCGA § 34-9-221 (h). The court reasoned that the evidence previously concealed by fraud was newly discovered evidence because "the insurer was thwarted in its opportunity . . . to discover the evidence." *Spiva*, supra at 153.

In *Anderson*, supra, on the other hand, the 60-day limitation period was not tolled. In that case, the employee was injured while he was working for a partner of the employer, but not the employer itself. His claim for benefits was paid initially; but it was controverted 105 days after the expiration of the limitation period. The insurer asserted that the limitation period should be tolled because it had learned through newly discovered evidence that the accident did not arise out of and in the course of employment. The ALJ and the full board ruled on the change in condition claim, but did not address the issue of newly discovered evidence. The superior court affirmed and the Court of Appeals reversed and remanded. The Court of Appeals refused to apply the newly discovered evidence exception to

the facts of that case noting that, if the insurer had exercised reasonable diligence, it would have discovered the facts in a timely fashion.

In *Carpet Transport*, supra, the employee misrepresented, and his co-workers failed to disclose, that the employee's injury had not arisen out of and in the course of his employment, but was the result of horseplay. The insurer controverted the .claim after the 60-day statute of limitation had run. It alleged that it was thwarted in its investigation of the facts by the misrepresentation of the employee and the failure of his co-employees to disclose the true facts. The ALJ found that the insurer failed to diligently investigate the case and that, therefore, it did not support its notice to controvert with newly discovered evidence. The ALJ's findings were adopted by the full board and the superior court affirmed. The Court of Appeals reversed, holding that the fact that the employee and his co-workers had knowledge of the facts does not mean the insurer was not diligent in failing to discover the facts earlier. Notably, however, the Court of Appeals remanded the case to the board to determine whether the insurer was thwarted in its original investigation. Id. at 469.

In this case, Bahadori claimed falsely that he did not work between the months of September and December 1992, because of his prior injury. Although this misrepresentation may have been sufficient to thwart a reasonably diligent investigation, the board made no findings in this regard. Therefore, as in *Carpet Transport*, we remand this case to the board to determine whether Bahadori's fraud thwarted a reasonably diligent investigation by Sizzler. On remand, the board should keep in mind that, in the workers' compensation context, "there must be a balancing between the prompt and voluntary initiation of the payment of workers' compensation benefit[s] to an employee, on the one hand, and the availability, on the other hand, of an opportunity for the employer/insurer to base a notice to controvert upon evidence which the employer/insurer was unable to discover earlier as a result of the employee's own misrepresentation." *Carpet Transport*, supra at 469.

*Judgment reversed and case remanded. Benham, C. J., Fletcher, P. J., Hunstein, Carley, Hines, JJ., and Judge Charles B. Mikell concur. Sears, J., not participating.*

DECIDED NOVEMBER 23, 1998.

*Clements, Clark & Sweet, John F. Sweet,* for appellant.
*Hamilton, Westby, Marshall & Antonowich, Steven A. Westby, Joseph T. Brasher,* for appellees.